## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TRACY CANTY,

      *Plaintiff*,

    v.

DISTRICT OF COLUMBIA, et al.,

      *Defendants*.

Civil Action No. 1:21-cv-02067 (CJN)

## MEMORANDUM OPINION

Tracy Canty asserts various claims against Metropolitan Police Defendant Officer Peter Pannoh and the District of Columbia, each stemming from Canty's arrest in December 2019. Because Canty failed to satisfy procedural prerequisites, and because his Amended Complaint otherwise fails to state any claim for relief, the Court will grant the District's and Pannoh's separate Motions to Dismiss, ECF Nos. 11 & 18.

### FACTS

For purposes of assessing the Defendants' motions to dismiss, the Court accepts the facts alleged in Canty's Amended Complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Canty is an African American man in his 40s. Amend. Compl. ("Compl."), ECF No. 9, at ¶ 5. For a little over two years before the incident leading to this lawsuit, he worked at a Target store in Washington, D.C. *Id.*

One day, in late 2019, Canty finished his night shift. *Id.* at ¶ 6. What happened next is hard to follow; the precise factual allegations in Canty's Amended Complaint are anything but clear. As best the Court can tell, before heading home, Canty got into an altercation with a patron, a Latino man referred to as "Mr. Montane" or "Mr. Montanez." *See id.* at ¶¶ 34–35, 38, 45. Canty

appears to allege that this man pulled a knife on him.  *See id.* ¶¶ 19, 26, 34.  But Canty hints that he himself might have pulled a knife out, too.  *See id.* at ¶ 19 ("[Montanez] left out material facts until a later time, which was that he [that is, Montanez] had pulled a knife out *also*." (emphasis added)).  In what order these events happened—and for what reason—is not ascertainable on the face of the Amended Complaint.  But there is a hint that a child, previously banned from the store, was "in the act of stealing at the time of the incident."  *Id.* ¶ 37.

What is clear is that, after this altercation, Canty left work.  *See id.* at ¶ 7 ("Shortly after, Mr. Canty arrived at his destination on his travels from work[.]").  At that point, Montanez and another man apparently called the police.  *See id.* at ¶¶ 19, 34.  Montanez claimed that Canty pulled a knife on him; it's unclear whether the second man also claimed that Canty pulled a knife on him, or if he was a mere witness.  *Compare id.* at ¶ 35 (suggesting that there was a second alleged *victim* of Mr. Canty, not a mere witness) *with id.* at ¶ 37 (detailing communications with an "underage witness" who was allegedly "persuaded by the accuser's story and corroborated his story as such").  It simply is not ascertainable who exactly were the alleged victims and who were mere witnesses.  Regardless, Canty alleges, and the Court accepts as true, that "[a] patron at Target[] had called 911 and falsely accused Mr. Canty of a misdemeanor."  *Id.* ¶ 8.

Based on this allegation, an MPD detective called Canty and asked him to return to Target.  *Id.* at ¶ 9.  Canty complied.  *Id.* at ¶ 10.  Some eight officers and three detectives were at the scene, including Pannoh.  *See id.* at ¶¶ 25, 33.  Unnamed officers then detained and arrested Canty, apparently for "attempted threats to do bodily harm."  *Id.* at ¶¶ 11, 13.  An officer named "D.G. Dowd" grabbed Canty's wrist to search him; Canty did not consent to this.  *Id.* at ¶ 12.  Before placing him under arrest, some officers also searched the pockets of his coats and pants.  *Id.* at ¶ 23.  This was "far more than a search incident to arrest," Canty alleges, as he "wasn't supposed

to be arrested." *Id.*  That is because, according to Canty, officers in D.C. can arrest individuals for only certain misdemeanors that are not committed in their presence. *Id.* at ¶ 24.  The misdemeanor that he was arrested for, Canty proffers, is not one of them. *Id.*

With regards to Pannoh, Canty alleges that he "left out material facts that were known to the officers on scene." *Id.* at ¶ 14.  And Canty alleges that "Officer Pannoh specifically left material facts out of the police report and withheld this exculpatory evidence." *Id.* at ¶ 26.  What these facts are exactly is unclear.  But the Amended Complaint does include complaints regarding the judgment of various officers.  For instance, Canty alleges that the officers "had reason to discredit the alleged victim's testimony," because "during [the alleged victim's] 911 call and the investigation[,] [the alleged victim] left out material facts until a later time[.]" *Id.* ¶ 19.  Canty also alleges that this victim admitted that he had pulled out a knife, meaning "the alleged victim wasn't trustworthy or reliable[.]" *Id.* at ¶ 26.  Indeed, Canty proffers that "[t]he second alleged victim also admitted that he didn't see Mr. Canty with a knife." *Id.* at ¶ 35.  He also alleges that his own "testimony should have been more credible because he was an employee of the store." *Id.* Despite all this, Canty alleges that "Officers withheld this exculpatory evidence."

## PROCEDURAL HISTORY

Canty's Amended Complaint alleges seven counts against the District of Columbia and Pannoh.  Counts I, IV, V, and VI are common-law claims under D.C. law, alleging false imprisonment and unlawful arrest, *see id.* at ¶¶ 15–20; battery, *see id.* at ¶¶ 44–49; negligent infliction of emotional distress, *id.* at ¶¶ 50–53; and negligent supervision, *id.* at ¶¶ 53–61.  Count II is brought under 42 U.S.C. § 1983, alleging a violation of the Fourth Amendment. *See id.* at ¶¶ 21–30.  And Count III alleges a violation of Title VI of the Civil Rights Act of 1964. *See id.* at

¶¶ 31–43.  Count VII, in turn, seeks to hold the District responsible under a theory of respondeat superior.  *See id.* at ¶¶ 62–71.[1]

Both the District and Pannoh have moved to dismiss.  *See generally* District of Columbia's Mot. to Dismiss ("Dist. Mot."), ECF No. 11; Pannoh's Mot. to Dismiss ("Pannoh Mot."), ECF No. 18.

## I. CANTY'S CLAIMS AGAINST THE DISTRICT FAIL

The Court begins with the District's Motion to Dismiss, which presents several meritorious arguments.

### A. Canty fails to allege municipal liability sufficient to sustain a Fourth Amendment claim

Starting with Count II—Canty's § 1983 claim alleging a violation of his Fourth Amendment rights—the Amended Complaint runs into immediate problems.  It is not enough that Canty alleges a constitutional violation; he must allege facts sufficient to establish municipal liability.  *Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008).  That requires determining "whether the complaint states a claim that a custom or policy of the municipality caused the violation."  *Id.* (quoting *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003)).

While there are several ways that a plaintiff can establish municipal[2] liability, Canty hangs his hat on just one:  deliberate indifference.  *See* Pl.'s Opp. to Dist.'s Mot. to Dismiss ("Pl.'s Dist. Opp."), ECF No. 14, at 8 ("Mr. Canty explains that the Defendant's customs allow officers to

---

[1] Given the federal claims in Counts II and III, this Court has subject-matter jurisdiction; it will exercise supplemental jurisdiction over the remaining claims.

[2] While the District is not technically a municipality, precedent from the Court of Appeals tends to use the word "District" and "municipality" interchangeably in the context of these kinds of claims.  *See, e.g.*, *Baker*, 326 F.3d at 1306.

ignore all pertinent District of Columbia laws relating to arrests merely to falsely arrest individuals

in an unconstitutional manner, inflicting injury.  Mr. Canty explained that the officers committed

these acts in deliberate indifference of his rights.").

"Deliberate indifference is determined by analyzing whether the municipality knew or

should have known of the risk of constitutional violations, an objective standard." *Baker*, 326 F.3d

at 1307.  But Canty fails to allege that the District knew or should have known of the constitutional

violations he claims.  Of the ten paragraphs he devotes to this question, only one appears to address

this issue.  It is worth setting out in its entirety:

> Although not authorized by written law, unconstitutional practices could
> well be so permanent and well[-]settled [so] as to constitute a "custom or
> usage" under 42 U.S.C.[ ] § 1983 with the force of law [*sic.*].  It is apparent
> that these unlawful arrests are "customs and usage" practices of such
> duration and frequency as to warrant a finding of either actual or
> constructive knowledge by the Defendant which have been customary
> among MPD officers.  Because over eight (8) officers and (3) detectives
> were called to the scene, Target. [*sic.*]  Over eleven (11) MPD officers, and
> not one knew that this was unlawful.  [*sic.*]  Not only were these officers on
> the scene, yet [*sic.*] body[-]camera footage shows them making calls to
> MPD officers that weren't on the scene.  This is a clear showing that this is
> custom and usage practices that are customary among MPD officers, and
> the Defendant had actual or constructive knowledge of these customs.

Compl. at ¶ 25 (citation omitted).

It is not this Court's job to stitch together a way in which these allegations might plausibly

allege some facts supporting Canty's claim—especially since he is represented by counsel.  In any

event, there is simply not enough here to support Canty's claim.  Canty has alleged no facts

showing that the *District* knew or should have known of the constitutional violations he complains

of, which appear to be unlawful arrests.  Canty must "allege[ ] an 'affirmative link,' such that a

municipal policy was the 'moving force' behind the constitutional violation." *Baker*, 326 F.3d at

1306 (internal citations omitted).  None of what he alleges goes to, let alone supports, whether the

District had some policy motivating these alleged violations.  *Cf. Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program.").

**B. Canty's Title VI claims fail as a matter of law**

Turning next to Count III, Canty's claim against the District runs into another hurdle. Recall that Count III alleges a violation of Title VI of the Civil Rights Act of 1964, which requires a showing of intentional discrimination.  *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001) ("[I]t is similarly beyond dispute . . . that § 601 prohibits only intentional discrimination.").  This follows from its text, which provides that no person shall, "on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity" covered by it.  42 U.S.C. § 2000d.

To survive a motion to dismiss, a Title VI claim must thus allege sufficient facts to demonstrate intentional discrimination.  The Amended Complaint alleges none.  To be sure, Canty alleges that various police officers "acted with deliberate indifference and a reckless disregard for the rights of Mr. Canty and with pure malice, [and] purposely discriminated against him for the fact that he is African American and based on his appearance."  Compl. at ¶ 33.  But those are mere legal conclusions, which are inadequate to survive a motion to dismiss.  *See Iqbal*, 556 U.S. at 678.

Turning to the facts that Canty *does* allege to support this claim, none supports a showing of intentional discrimination.  The crux of Canty's argument appears to be that, because the responding officers believed his accuser's version of events, not his own, they must have been

discriminating against him because of his race, since Canty is African American and his accuser is Latino. *See* Compl. at ¶ 35. In Canty's mind, because there were many reasons not to believe the accuser (he initially did not tell the officers that he had "pulled a knife on Mr. Canty," only telling them that detail later, *see id.* at ¶ 34), and because there were many reasons to believe Canty ("Mr. Canty's testimony should have been more credible because he was an employee of the store," *id.* at ¶ 35), only racial discrimination can explain the officers' conduct ("[o]fficers had no reason to discredit his story except for the fact that he was black and his appearance," *id.*). He makes several more allegations along these lines. *See id.* at ¶¶ 36–43. But these facts do not plausibly state a claim of intentional discrimination.

### C. Canty's District-law claims fail for not complying with D.C. Code § 12-309

For the remainder of the claims against the District—Counts I, IV, V, VI, and VII—the District urges the Court to dismiss on the grounds that Canty failed to comply with D.C. Code § 12-309. Under that provision, no action can be brought against the District "for unliquidated damages . . . unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage." D.C. Code § 12-309. "The D.C. Court of Appeals has repeatedly held that compliance with the statutory notice requirement is mandatory, and that § 12-309 is to be construed narrowly against claimants." *Blue v. District of Columbia*, 811 F.3d 14, 21–22 (D.C. Cir. 2015) (alteration accepted) (quotations omitted).

Nowhere in Canty's Amended Complaint does he state that he provided the District with the notice that § 12-309 demands. His arrest occurred on December 17, 2019. *See* Compl. at ¶ 6. That means he needed to provide notice by June of 2020. *See* D.C. Code § 12-309 (requiring

notice to the District "within six months after the injury or damage was sustained"). But the District asserts (through a signed affidavit) that it did not receive such until December 17, 2020—six months to the day *after* it was due. *See* Dist. Mot. at 13.

Canty does not dispute these dates. Rather, he claims for the first time in his opposition brief that he was unaware until six months following his arrest that he was injured. *See* Pl.'s Dist. Opp. at 12. As he explains it, "Naturally being a strong man, Mr. Canty was not aware that he was damaged initially." *Id.* He does not allege a precise date when he realized that he was injured.

The Court will not accept this belated attempt to amend the Amended Complaint. "It is well settled law that a plaintiff cannot amend his . . . complaint by the briefs in opposition to a motion to dismiss." *Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 160 n.7 (D.D.C. 2014). Yet that is what Canty attempts to do here. Even if the Court were to overlook Canty's failure to plead this theory, however, it would make no difference. Canty is correct that, under District law, complete unawareness of an injury can toll the time under § 12-309. *See Barnhardt v. District of Columbia*, 8 A.3d 1206, 1212 (D.C. 2010) ("[T]he six-month bar will operate unless that plaintiff had a 'total lack of awareness' of the injury or damage." (quoting *District of Columbia v. Ross*, 697 A.2d 14, 19 (D.C. 1997)). But as the D.C. Court of Appeals has clarified, "total lack of awareness" requires *total* lack of awareness: "[L]ack of awareness of the seriousness of the injury, or all components of the injury, will not suffice." *Id.* Even taking Canty's belated allegations at face value, they go to show only that Canty lacked awareness of the *seriousness* of his injury. *See* Pl.'s Dist. Opp. at 12 ("Mr. Canty was not aware that he was injured from the instant incident. Although the incident was humiliating and embarrassing, he wasn't aware that he was injured until we all [*sic*] the six-month period. After that Mr. Canty noticed that he was

depressed and started having sleep[-]deprivation issues.").  Under District precedent, that is not enough.

Canty also attempts to rely on § 12-309's police-report exception, *see* Compl. at 2, which provides that "[a] report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section."  But District law is more nuanced than this broad statement suggests.  Rather, the exception is based on the idea "that written notice by a claimant should not be a perquisite to legal action if, in fact, *actual notice* in the form of a police report has been received by the District."  *Allen v. District of Columbia*, 533 A.2d 1259, 1262 (D.C. 1987).  Accordingly, to count as adequate notice, the police report must contain "information as to time, place, cause and circumstances of injury or damage with at least the same degree of specificity required of a written notice."  *Id.* (quotation omitted).  There must be enough for the District to have anticipated, based off the police report alone, that the complaint would be forthcoming.  *See id.*

The report here fails to meet these standards.[3]  It provides no facts hinting that the officers at issue acted without probable cause, nor does it hint at any injuries that Canty might have suffered.  There is simply not enough in it for the District to have anticipated, based off the police report alone, that Canty had any claims against it.

---

[3] The District attached a copy of the police report to its Motion to Dismiss.  See ECF No. 11-1.  Canty did the same in his opposition to the District's Motion to Dismiss.  *See* ECF No. 14, ex. A.  And all filings discuss the importance of the police report to this exception.  Indeed, the police-report exception is mentioned by name in Canty's Amended Complaint.  *See* Compl. at 2.  The Court may thus "consider the police report without converting the District's motion to dismiss into a motion for summary judgment."  *Harris v. Bowser*, 404 F. Supp. 3d 190, 198 n.6 (D.D.C. 2019).

## II. CANTY'S CLAIMS AGAINST PANNOH FAIL

Canty brings the same claims against Pannoh that he brought against the District.  Once again, each falls short.

### A.  Canty fails to allege that Pannoh violated the Fourth Amendment

In Count II, Canty alleges a violation of the Fourth Amendment, actionable under 42 U.S.C. § 1983.  *See* Compl. ¶¶ 21–30.  But there is only one allegation against Pannoh himself:  "Officer Pannoh specifically left material facts out of the police report and withheld this exculpatory information."  Compl. at ¶ 26.

Whatever claim this allegation might support, it does not support a violation of the Fourth Amendment.  The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"  U.S. Const. amend. IV.  It has nothing to do with police reports written after a seizure has taken place.

While Canty's brief discusses how certain unnamed officers arrested him without probable cause, his brief suggests that Pannoh was *not* one of them:  "Officer Pannoh, with full knowledge of the misconduct and actions, not only did not question the Officers' actions at the scene of the incident, but also condoned and helped Defendants [*sic*] continue to threaten Mr. Canty's fundamental rights by writing an official report that would not compromise his colleagues, even though the Officers responsible for unlawfully arresting Mr. Canty had no legitimate reason to do so."  Pl.'s Opp. to Def. Pannoh's Mot. ("Pl.'s Pannoh Resp."), ECF No. 20, at 6.  This is not enough to support any plausible violation of the Fourth Amendment by Pannoh.[4]

---

[4] Canty also asserts that "Officer Pannoh was the respondent [sic] officer of the incident, therefore in charge or properly investigating the occurrence and arresting real suspects."  Pl.'s Pannoh Resp. at 7–8.  None of this, however, plausibly supports a violation of the Fourth Amendment.

### B. Canty cannot sustain a Title VI claim against Pannoh

Turning next to Count III, alleging a violation of Title VI, Canty runs into a foundational problem:  Title VI claims cannot be brought against individuals.  Simply put, "[t]here is no individual liability under Title VI."  *Delbert v. Duncan*, 923 F. Supp. 2d 256, 261 (D.D.C. 2013); *see also Shotz v City of Plantation*, 344 F.3d 1161, 1169–70 (11th Cir. 2003).  To the extent that Canty seeks to hold Pannoh individually responsible for a violation of Title VI, his claim fails.

### C. Canty fails to allege that Pannoh falsely arrested him

Count I is a District-law claim for false arrest.  *See* Compl. at ¶¶ 15–20.[5]  But nowhere in Count I is Pannoh mentioned.  Indeed, looking to the rest of the Complaint and as discussed above, Canty appears to admit that Pannoh *did not* arrest him.

Canty's argument to the contrary is hard to follow.  He cites to Court of Appeals precedent that states, under D.C. law, "liability is incurred for the procuring of a false arrest and imprisonment if by words, one directs, requests, invites or encourages the unlawful detention of another."  *Amobi v. District of Columbia Dep't of Corrections*, 755 F.3d 980, 990 (D.C. Cir. 2014) (quoting *Smith v. District of Columbia*, 339 A.2d 213, 218 (D.C. Cir. 1979)) (alteration accepted).  His brief then contends that "[i]t is certain to assure that Officer Pannoh at least failed to investigate the reported crime in order to verify and appropriately respond to the situation, and to prevent other officers (including himself) from unlawfully restraining and imprisoning Mr. Canty."  Pl.'s Pannoh Resp. at 10.  But even if these allegations were in the Complaint (and they are not), they do not allege that, "by words, [Pannoh] direct[ed], request[ed], invite[d] or encourage[d] the unlawful

---

[5] It is unclear whether Canty brings Counts I, IV, V, and VI against Pannoh in his individual capacity or in his official capacity.  To the extent that he brings them against Pannoh in his official capacity, they fail for the same reasons discussed in Part I.C, *supra*.  *See Crafton v. District of Columbia*, 132 F. Supp. 3d 1, 10 n.8 (D.D.C. 2015).

detention of" Canty.  *Amobi*, 755 F.3d at 990.  Even on this unpleaded theory, Canty's claim against Pannoh fails.

### D.  Canty fails to allege that Pannoh battered him

Count IV alleges battery.  *See* Compl. at ¶¶ 44–49.  But the only allegations Canty makes regarding Pannoh are that he "specifically left material facts out of the police report and withheld this exculpatory evidence."  *Id.* at ¶ 45.  That has nothing to do with battery.  Indeed, Canty seems to acknowledge this shortcoming, noting in his response that he "should be entitled [to] the opportunity to prove his allegations through discovery."  Pl.'s Pannoh Resp. at 11.  But a motion to dismiss challenges the sufficiency of the allegations in the complaint.  And Canty has pleaded no facts suggesting the Pannoh touched him, let alone battered him.

### E.  Canty fails to state a claim of negligent infliction of emotional distress

Count V of Canty's Amended Complaint alleges negligent infliction of emotional distress. *See* Compl. at ¶¶ 50–53.  Pannoh is never mentioned in Count V.  But the claim does reincorporate all previous paragraphs, *see id.* at ¶ 50, which include Canty's general complaints about Pannoh allegedly failing to include relevant details in his police report.  Yet even if the Court assumes that Pannoh is included among the general "Officers" mentioned in Count V, Count V still fails to state a claim for negligent infliction of emotional distress.  The Complaint's relevant allegations are primarily legal conclusions, not actual facts.  *See, e.g.*, Compl. at ¶ 52 ("MPD officers with deliberate indifference and reckless disregard for the rights of Mr. Canty and with pure malice, purposely ignored the law, withheld exculpatory material facts in the police report and

investigation and clear proof that Mr. Canty was unlawfully detained, and humiliated, embarrassed, verbally abused, and harassed him at his place of work.").

Further, Canty fails to properly allege a serious and verifiable emotional distress—a requirement under District law.  *See, e,g*, *Williams v. Baker*, 572 A.2d 1062, 1068–69 (D.C. 1990) ("[T]he claimed distress must be 'serious' and 'verifiable.'").  "[T]o give rise to a duty in the context of an action for negligent infliction of emotional distress, the emotional distress must be acute, enduring or life-altering."  *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 817 (D.C. 2011).  What Canty's Amended Complaint alleges—"not being able to sleep, severe depression and more," Compl. at ¶ 53—falls short of this line, lack of specificity aside.  *See Sibley v. St. Albans School*, 134 A.3d 789, 798 & n.3 (D.C. 2016) (finding a claim of being "emotionally traumatized" by a given action not to be sufficiently serious and verifiable).

### F.  Canty admits that his negligent-supervision claim fails

Turning to the final claim against Pannoh, Count VII, Canty admits that "Defendant is correct that Plaintiff[] improperly brought the Negligent Supervision claim upon Defendant Pannoh." Pl.'s Pannoh Resp. at 12.  The Court will thus dismiss this claim as well.

\*      \*      \*

Canty's Complaint fails to state any claim upon which relief can be given.  The Court will thus grant the District's Motion to Dismiss, ECF No. 11, as well as Pannoh's, ECF No. 18.  An appropriate Order will follow.

DATE:  August 24, 2022

CARL J. NICHOLS
United States District Judge

13